NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2018-0006

QUENTIN H. WHITE

v.

BRIGITTE AUGER F/K/A BRIGITTE GAUDREAU & a.

Argued: October 11, 2018
Opinion Issued: January 11, 2019

Lane & Bentley, P.C., of Keene (Michael P. Bentley on the brief and orally), for the plaintiff.

Gallagher, Callahan & Gartrell, P.C., of Concord (Robert J. Dietel on the brief and orally), and Donahue Law, P.A., of Keene (Charles A. Donahue on the brief), for defendant Brigitte Auger.

BASSETT, J. The plaintiff, Quentin H. White, filed an action to quiet title against the defendants, Brigitte Auger (formerly Brigitte Gaudreau) and Joanne Jackson (formerly Joanne Labadie). Jackson defaulted. After a bench trial, the Superior Court (Ruoff, J.) found in favor of Auger on the action to quiet title, as well as on her counterclaims for declaratory judgment and specific performance. White appeals the trial court's order. We affirm.

The trial court found the following relevant facts.  In the spring of 1968, White met Perley E. Swett.  Swett introduced himself as the "Taylor Pond Hermit," and explained that he was in need of food.  White and his family left and soon returned with food.  White refused payment from Swett, and the family remained to talk with Swett.  This was the start of an enduring friendship.  White regularly visited Swett to check on him, sometimes walking several miles in the snow to do so.  He frequently helped Swett by delivering groceries, going to the bank, and taking Swett to visit his sister.  White also helped Swett deliver gifts of money or deeds of land to people in the community — mostly to local children.  Auger was one of the local children who repeatedly benefited from Swett's generosity; at one point, Swett told Auger that he would give her a horse and some land.

Swett often attempted to pay White for, in Swett's words, his "services."  White always refused payment, feeling that it was his neighborly duty to help.  At one point, Swett attempted to give White a deed for a large parcel of land.  After a heated discussion, White tore up the deed.  Subsequently, in 1972, Swett gave White the deed at issue in this appeal in exchange for White's services.  White accepted the deed reluctantly, and did not intend to record it.  The deed conveyed to White certain land located in Stoddard, and provides, in relevant part:

> Know all Men by these Presents: That I, Perley E. Swett, of Stoddard, New Hampshire, for consideration paid, grant to Quentin H. White of Munsonville, New Hampshire, with warranty covenants to the said Grantee, about ten acres of land, be the same more or less, and this area being that part of the so called "Graves Land" on the south side of the road, conveyed on condition that he (Quentin H. White) may desire to and erect some building on said land and live there either part time or year around.  There is, however, no requirement that he live or build on the south side of the road if he were to acquire one or more acres on the north side of the road, which would be a far better building location.  The main condition being that this be done within ten years, and that he, Quentin H. White, has not in some way acquired title to any other area of Perley Swett's home farm.  In case Quentin H. White does acquire a more attractive land area to live on or to build a house on, this land area should be transferred to Brigitte Gaudreau if she is available.  If Brigitte Gaudreau's address or location is not known, this land should be deeded to Joanne Labadie at some time before she becomes twenty-one.

Swett passed away in September of 1973.  Prior to his death, Swett had appointed White to be the executor of his will, which contained several bequests to White, including part of Swett's "home farm."  The probate proceedings quickly became contentious, and White resigned as executor.  In

1973, prior to his resignation, White recorded the 1972 deed, and entered into a Stipulation with Swett's estate and heirs, thereby relinquishing any of his claims under Swett's will and in connection with any unrecorded deeds.

In 2016, White attempted to sell the land; however, the sale fell through because the prospective buyer, having become aware of the references to Auger and Jackson in the 1972 deed, was concerned that White might not hold the title free and clear of Auger's and Jackson's interests. White then brought an action to quiet title against Auger and Jackson. Jackson defaulted. Auger contested the action and brought counterclaims against White. The trial court ruled in favor of Auger in the quiet title action, reasoning that the deed, properly interpreted, contemplated transferring ownership of the land to Auger in the event that White did not live on or build on the land within ten years. The trial court also ruled in favor of Auger on her declaratory judgment and specific performance counterclaims. This appeal followed.

"In an action to quiet title, the burden is on each party to prove good title as against all other parties whose rights may be affected by the court's decree." Hersh v. Plonski, 156 N.H. 511, 514 (2007) (quotation omitted). "We will uphold the trial court's determination unless it is erroneous as a matter of law or unsupported by the evidence." Id. As the appealing party, White has the burden of demonstrating reversible error. See Gallo v. Traina, 166 N.H. 737, 740 (2014).

White first argues that the trial court erred in interpreting the 1972 deed. Specifically, he argues that the provision mandating that the land be transferred to Auger if White were to "acquire a more attractive land area," was the only circumstance under which the land could be transferred to Auger. Therefore, he asserts that, because he never "acquire[d] a more attractive land area," the deed condition was not satisfied, and the trial court erred by awarding title to Auger. Auger counters that, as the trial court found, the "acquire a more attractive land area" condition should not be read in isolation, but must be read together with the prior provisions. Therefore, Auger asserts that the trial court correctly ruled that Swett intended for the land to be transferred to her not only if White acquired more attractive land, but also if White failed to build or live on the land within ten years. We agree with Auger and the trial court.

Resolving this issue requires that we interpret the 1972 deed. "The proper interpretation of a deed is a question of law for this court." Ettinger v. Pomeroy Ltd. P'ship, 166 N.H. 447, 450 (2014). "As a question of law, we review the trial court's interpretation of a deed de novo." Id. "In interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time." Id. "We base our judgment on this question of law upon the trial court's findings of fact." Id. "If the language of the deed is clear and unambiguous, we will

3

interpret the intended meaning from the deed itself without resort to extrinsic evidence." Id. "If, however, the language of the deed is ambiguous, extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance may be used to clarify its terms." Id. When interpreting the parties' intent, we consider the deed as a whole. See Motion Motors v. Berwick, 150 N.H. 771, 776 (2004). We generally disfavor interpreting deed conditions in such a way that would cause a forfeiture of the property upon breach of such conditions; however, we adhere to the guiding principle that the intent of the parties should be effectuated whenever possible. See Anna H. Cardone Revocable Trust v. Cardone, 160 N.H. 521, 529 (2010). Furthermore, "[w]e remain mindful that formalistic requirements in real estate conveyancing have largely given way to effectuating the manifest intent of the parties, absent contrary public policy or statute." Id. at 530.

The 1972 deed is not ambiguous. Swett explicitly conveyed the land to White on the condition that White "erect some building on said land and live there either part time or year round." Although the deed allowed White to acquire land on the north side of the road instead, Swett's main condition was that "this" — building and living on the land — "be done within ten years," and that White "not in some way acquire[] title to any other area of Perley Swett's home farm." Swett then explained his intended result in the event that White did not satisfy this main condition by stating that "[i]n case Quentin H. White does acquire a more attractive land area to live on or to build a house on, this land area should be transferred to Brigitte Gaudreau if she is available." Although this latter provision does not explicitly include the "this be done within ten years" language, it does incorporate and reference both aspects of the main condition — that White not acquire more attractive land, and that he live or build on the land. Therefore, we agree with Auger and the trial court that this latter provision was intended to be read together with the prior provisions of the deed, thereby clarifying that the land should be transferred to Auger in the event that any of the conditions were not satisfied. See Motion Motors, 150 N.H. at 776 (considering the provisions of a deed together as a whole). Because there is no dispute that White never built or lived on the land within ten years, ownership of the land was transferred to Auger pursuant to the terms of the deed.

White next argues that the trial court, by awarding title to Auger, erred because it deprived him of compensation for the services he rendered to Swett. We do not address the merits of this argument. "It is the burden of the appealing party . . . to provide this court with a record sufficient to decide [his] issues on appeal, as well as to demonstrate that [he] raised [his] issues before the trial court." Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004); see also Sup. Ct. R. 15(3). Additionally, we will not address arguments that a party has not sufficiently developed in its brief. See Douglas v. Douglas, 143 N.H. 419, 429 (1999) (holding that complaints about adverse rulings without developed legal argument are insufficient to warrant appellate review).

Here, White's argument is not sufficiently developed. Moreover, to the extent that White argues that he established an equitable claim to the land, and that the trial court erred in awarding title to Auger, he must provide this court with a record sufficient to decide the issue. White did not provide us with a transcript of the trial. Therefore, given the absence of a developed argument and a sufficient record, we will not address this argument. See Red Oak Prop. Mgmt., 151 N.H. at 250; Douglas, 143 N.H. at 429.

White also argues that the trial court, by awarding title to Auger, erred because it deprived him of the benefit of his bargain in the 1973 Stipulation entered into with Swett's heirs. White contends that, in exchange for relinquishing his claims under Swett's will and in connection with any unrecorded deeds, he gained ownership of the land described in the 1972 deed free of any claims by Swett's estate or his heirs, and therefore, free of the conditions set forth in the 1972 deed. We disagree.

The Stipulation has no bearing on this case. White's argument that the trial court deprived him of the benefit of his bargain in the Stipulation fails because Auger was not a party to that agreement — she is not one of Swett's heirs. White could not bargain away property interests that he himself did not possess. Moreover, the Stipulation, by its terms, did not alter the conditions set forth in the deed.

White next argues that the trial court erred when it ruled that RSA 477:3-b, II(a) (2013) does not render Auger's executory interest in the land void. RSA 477:3-b provides, in relevant part:

> II. (a) After December 31, 2008, no legal possibility of reverter, right of re-entry, or executory interest in real property may be retained or created unless either the grantor or the grantee is a public or charitable organization. Any language purporting to retain or create such a future interest shall be void. Language which also creates a covenant may be enforced as such by an action at law or equity but without forfeiture.
>
> . . . .
>
> III. Renewal declarations shall be required in certain cases.
>
> (a) Unless the original grantor or grantee of the interest was, or the present owner of the interest is, a public or charitable organization, any existing possibility of reverter, right of re-entry, or executory interest in real property shall become void unless renewal declarations are filed in the appropriate registry of deeds as hereinafter provided. Covenants as such are not subject to

5

renewal and remain enforceable by an action at law or equity but without forfeiture.

(b) Times of filing future interests under this section shall be as follows:

(1) A declaration of renewal of an existing possibility of reverter, right of re-entry, or executory interest in real property that was retained by or granted to a natural person need not be recorded while owned by that person. Any subsequent heir, devisee, grantee, creditor, or other successor to such interest shall record a declaration within 3 years after acquiring it or the interest shall become void.

. . . .

RSA 477:3-b. White contends that RSA 477:3-b, II(a) extinguished the future interests specified in the statute that existed as of December 31, 2008, and therefore, that Auger's executory interest is void. We disagree with White's interpretation of the relevant statutory provisions.

For the purpose of addressing White's argument, we assume, without deciding, that Auger held an executory interest that falls within the scope of RSA 477:3-b. Resolution of this issue requires that we engage in statutory interpretation. "We review the trial court's statutory interpretation de novo." Olson v. Town of Grafton, 168 N.H. 563, 566 (2016). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." Petition of Carrier, 165 N.H. 719, 721 (2013). "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." Garand v. Town of Exeter, 159 N.H. 136, 141 (2009) (quotation omitted). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Carrier, 165 N.H. at 721. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id.

White's assertion that RSA 477:3-b, II(a) extinguishes Auger's executory interest is contrary to the plain meaning of the statute. Pursuant to Paragraph II(a), after December 31, 2008, no executory interest in real property may be

6

"retained or created unless either the grantor or the grantee is a public or charitable organization." RSA 477:3-b, II(a). Under Paragraph II(a), after December 31, 2008, any language in a deed that purports to "retain or create" a future interest specified in the statute where neither the grantor nor the grantee is a public or charitable organization, is void. Id. Paragraph II(a) does not void Auger's interest because her future interest was created before December 31, 2008.

Our interpretation of Paragraph II(a) is bolstered when Paragraphs II(a) and III are read together. See Carrier, 165 N.H. at 721 (observing that we construe all parts of a statute together). Paragraph III of the statute establishes a renewal scheme for the future interests specified in the statute that existed as of December 31, 2008. See RSA 477:3-b, III. Under the renewal scheme, certain individuals and entities holding such future interests must file renewal declarations in order to prevent their interests from becoming void. See RSA 477:3-b, III(a). Were we to adopt White's interpretation of Paragraph II(a), there would be no such future interests to renew, and, therefore, Paragraph III would be rendered meaningless. See Carrier, 165 N.H. at 721 (observing that we avoid producing an absurd result when construing statutes); Garand, 159 N.H. at 141 (observing that every word of a statute should be given effect whenever possible). We also note that, pursuant to RSA 477:3-b, III(b)(1), Auger is a natural person and the original grantee of the future interest; therefore, she was not required to file a renewal declaration. See RSA 477:3-b, III(b)(1).

Accordingly, we conclude that the trial court did not err when it ruled that RSA 477:3-b, II(a) does not void Auger's interest.

Affirmed.

LYNN, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

7