NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2019-0553

RICHARD D. ARELL, JR. & a.

v.

HENRY M. PALMER & a.

Argued: September 9, 2020
Opinion Issued: October 30, 2020

Shaheen & Gordon, P.A., of Concord (Karyn P. Forbes and Alexander W. Campbell on the brief, and Ms. Forbes orally), for the plaintiffs.

Cleveland, Waters and Bass, P.A., of Concord (Timothy E. Britain and Jeffrey C. Christensen on the brief, and Mr. Christensen orally), for the defendants.

DONOVAN, J. The defendants, Henry M. Palmer and Janis A. Monty-Palmer, appeal an order of the Superior Court (Kissinger, J.) granting summary judgment to the plaintiffs, Richard D. Arell, Jr. and Natalie E. Allard-Arell. In their petition for declaratory judgment and injunctive relief, the Arells asserted that the Palmers' temporary easement to use a well on the Arells' property required the Palmers to develop their own water source. The trial court ordered the Palmers to investigate the cost and feasibility of developing a well on their own property, and, if possible and reasonable, to install a well within three

years.  Because the clear and unambiguous language of the Palmers' deed does not support the trial court's decision, we reverse and remand.

## I.  Facts

The trial court found the following facts.  In 2000, the Palmers purchased a parcel of land (Palmer property) located on Canterbury Road in Chichester.  The Palmer property was previously owned by a trust, which also held title to a separate, undeveloped parcel of land located across the road.  A well situated on the undeveloped parcel serviced the residence located on the Palmer property.  The trust conveyed the Palmer property to the Palmers by deed, which included an easement granting them use of the well.  The deed granted:

> [A] temporary easement over a portion of said Tax Map 3, Lot 0119 owned by Grantor to access the existing well located on that lot for purposes of serving the existing single family residence located on the premises herein conveyed until such time as Grantees shall have another water source available.  Grantees shall be responsible for all costs and liability associated with the maintenance, repair and operation of the well, water lines, pumps and similar matters related to Grantee's [sic] utilization of the well.

In 2002, the trust sold the undeveloped parcel to the Arells by deed subject to the Palmers' easement.  The Arells sued the Palmers in 2018, seeking, as relevant here, a declaration that the easement "requires [the Palmers] to use reasonable efforts to affirmatively establish a new water source," and an injunction requiring the Palmers to establish a new water source within one year.  In response, the Palmers filed a counterclaim seeking a declaration affirming their right to use the well, as well as an injunction preventing the Arells from unreasonably interfering with the Palmers' use of the well.

Both parties moved for summary judgment.  The Arells argued that the word "temporary" required the easement to terminate, and because termination required the availability of another water source, the deed imposed an implied duty on the Palmers to develop another well.  Alternatively, the Arells argued that the deed was at least ambiguous as to the duration of the easement because the possibility that the easement would last indefinitely conflicted with the meaning of the word "temporary."  The Arells further asserted that, if the deed language was ambiguous, the rule of reason required the Palmers to identify and obtain another water source.  Specifically, the Arells claimed that the easement unreasonably burdened the use and enjoyment of their property, citing the Palmers' continued use of the well for seventeen years and the addition of a "Second Residence" on the Palmer property.

2

The Palmers countered that the clear and unambiguous language of the deed imposed no affirmative duty on them to terminate the easement. The Palmers also contended that the word "temporary" did not render the deed ambiguous because it was simply intended to qualify the phrase "until such time as [the Palmers] shall have another water source available." With respect to the rule of reason, the Palmers argued that the rule did not apply, and, even if it did, the Arells had not advanced any evidence that the easement unreasonably burdened the Arell property.

The trial court rejected the Palmers' position and granted the Arells' motion to the extent that it sought a ruling requiring the Palmers to take reasonable steps to create a well on their property. The trial court determined that the deed was ambiguous because both parties' suggested interpretations could fit within the meaning of the word "temporary." The trial court then applied the rule of reason, concluding that "it is unreasonable to assume that 'becomes available' means the spontaneous appearance of a well or access to public water, which has not occurred in the past nineteen years and so seems unlikely to occur." The court therefore ordered the Palmers to build a well on their own property within three years. The court further stated that, if the Palmers determined that installing a new well was not possible or "far exceed[ed] the customary cost," they could seek further review by the court. This appeal followed.

## II.  Standard of Review

In reviewing a trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party. Stowell v. Andrews, 171 N.H. 289, 293 (2018). If our review of the record discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. Id.

## III.  Analysis

On appeal, the Palmers argue that: (1) the deed language is unambiguous and imposes no duty on them to develop another water source; and (2) the rule of reason does not require them to develop another well.[1] We conclude that the Palmers' deed is unambiguous and imposes no duty on the Palmers to obtain another water source. We also conclude that the trial court improperly applied the rule of reason in ordering the Palmers to develop another well for their property.

---

[1] The Palmers also argue that the trial court erroneously shifted the burden of proof when it ordered them to investigate the cost and feasibility of developing another well. Because we conclude that neither the deed language nor the rule of reason requires the Palmers to develop another water source, we need not address this argument.

3

## A. Ambiguity

The Palmers first argue that the language of the deed granting the easement is unambiguous. Resolving this argument requires that we interpret the meaning of the deed language. The interpretation of a deed is a question of law, which we review de novo. White v. Auger, 171 N.H. 660, 663 (2019). In interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time. Id. If the language of the deed is clear and unambiguous, we interpret the intended meaning from the deed itself, considering it as a whole, without resorting to extrinsic evidence. Id. at 663-64. If, on the other hand, the language of the deed is ambiguous, extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance may be used to clarify its terms. Id. at 664.

The language of a contract, including a deed, is ambiguous if the parties to the contract could reasonably disagree as to the meaning of the language. See Birch Broad. v. Capital Broad. Corp., 161 N.H. 192, 196 (2010); LeBaron v. Wight, 156 N.H. 583, 585-86 (2007). A deed may contain either a patent or a latent ambiguity. Ettinger v. Pomeroy Ltd. P'ship, 166 N.H. 447, 450 (2014). A patent ambiguity exists "when the language in the deed does not provide sufficient information to adequately describe the conveyance without reference to extrinsic evidence." Id. A latent ambiguity exists when the language of the deed is clear, but "the conveyance described can be applied to two different subjects or is rendered unclear by reference to another document." Id.

The deed here grants the Palmers a "temporary easement" to access the well "until such time as [the Palmers] shall have another water source available." The conditional phrase "until such time as" signals the existence of a determinable easement. See Chapin and Wife v. School District, 35 N.H. 445, 450 (1857). A determinable easement is an easement that terminates automatically upon the occurrence of a stated event. See Black's Law Dictionary 644 (11th ed. 2019); see also North Hampton District v. Society, 97 N.H. 219, 220-21 (1951) (concluding that a deed conveying property for "so long as said lot shall be used as a lot for a school house lot" created a determinable fee that terminated when the grantee decided against operating a school on the lot (quotation omitted)). If the stated event or condition does not occur, the easement could potentially exist forever. See Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land § 10:3, at 676 (2019) (explaining that "since the event of defeasance may never happen, a defeasible easement may continue perpetually").

We construe the language of the Palmers' deed as unambiguously granting the Palmers a temporary easement to use the well until another water source becomes available. The word "temporary" is defined as "existing or continuing for a limited time." Webster's Third New International Dictionary

4

2353 (unabridged ed. 2002). Similarly, a "temporary easement" is an easement of "limited duration." Black's Law Dictionary 646 (11th ed. 2019). Although the Palmers' deed provides no certain date of termination, the determinable language "until such time as" clearly limits the duration of the easement. The Palmers acknowledge that, if they "decided to develop a new well," or if the town "installed municipal water supply in the area," the easement would terminate. Accordingly, because the deed does not grant a perpetual right to use the well, the Palmers' easement is temporary. See Eastman v. Piper, 229 P. 1002, 1005-06 (Cal. Dist. Ct. App. 1924) (interpreting the grant of a "temporary roadway" intended to last "until such time as the extension of Alta Vista St. is completed" as creating a determinable easement subject to termination when the road was extended (quotation omitted)); Honaker v. Wright, 152 S.E. 315, 315-16 (W. Va. 1930) (construing the conveyance of a private road "until such time as an alley shall be opened" as a "temporary easement" that terminated when the alley was completed (quotation omitted)).

The Arells emphasize that if another water source never becomes available, the easement could continue indefinitely. This result, the Arells contend, strips the word "temporary" of its ordinary meaning and renders the deed language ambiguous. We disagree. The word "temporary" refers to the conditional nature of the easement, confirming that its duration is limited by the availability of another water source. If this condition occurs, the easement must terminate. See Batchelder v. Bank, 66 N.H. 386, 388 (1891) (finding that a right-of-way conveyed to the plaintiff for "so long as the same shall be used by the said bank as a passage-way" terminated when the bank closed the passage-way (quotation omitted)). Accordingly, the word "temporary" has no separate, independent meaning when read in light of the deed as a whole. See White, 171 N.H. at 664 (noting that we consider the provisions of a deed together as a whole). We therefore conclude that the trial court erred in ruling that the word "temporary" rendered the easement ambiguous.

The Arells also argued to the trial court that the language of the deed impliedly obligated the Palmers to obtain another water source. However, we discern no evidence on the face of the deed that the parties intended the Palmers to take such action. The first sentence quoted above, which conveys the temporary easement, is passive, providing that the easement will continue until the Palmers "shall have another water source available." (Emphasis added.) The deed contains no specific deadline for when this condition must occur, nor does it expressly require the Palmers to obtain or investigate another water source. In addition, the second quoted sentence states that the Palmers "shall be responsible for all costs and liability associated with the maintenance, repair and operation of the well, water lines, pumps and similar matters related to [the Palmers'] utilization of the well." Juxtaposing the affirmative language of the second sentence with the passive phrasing of the first, we can infer that, had the parties intended for the Palmers to develop their own water source, the deed would have expressly said so. Thus, we conclude that the clear and

5

unambiguous language of the deed imposes no affirmative duty on the Palmers to terminate the easement.

## B. Rule of Reason

We next address the Arells' argument that, notwithstanding the language of the deed, the rule of reason requires the Palmers to develop another water source for their property. The rule of reason is a rule of interpretation, intended "either to give a meaning to words which the parties or their predecessors in title have actually used, . . . or else to give a detailed definition to rights created by general words either actually used or, whose existence is implied by law." Sakansky v. Wein, 86 N.H. 337, 339 (1933). "Reasonableness is a question of fact that is determined by considering the surrounding circumstances, such as location and the use of the parties' properties, and the advantages and disadvantages to each party." Heartz v. City of Concord, 148 N.H. 325, 332 (2002); see Sakansky, 86 N.H. at 339.

The rule of reason has two applications. First, we apply the rule "to interpret and give reasonable meaning to general or unclear terms in the deed language granting an easement." Id. at 331. If the words in the deed are clear and unambiguous, we need not rely on the rule of reason to interpret the language of the deed. Lussier v. N.E. Power Co., 133 N.H. 753, 756 (1990). Second, "irrespective of the deed language, we use the rule to determine whether a particular use of the easement would be unreasonably burdensome." Id. If, however, "the complaining party fails to make sufficient factual allegations of unreasonable use or burden, we need only consider the unambiguous language in the deed." Id. at 332.

Because we have already concluded that the deed is clear and unambiguous, there is no legal basis to consider the rule of reason as a tool for interpreting the language of the Palmers' deed. See Lussier, 133 N.H. at 757 (stating that "it is unnecessary to utilize" the rule of reason where the deed language "clearly expresses the parties' intent"). In addition, the Arells have failed to sufficiently allege any facts demonstrating that the Palmers' continued use of the well is unreasonably burdensome. The Arells argue that their property "has been burdened for over seventeen years, during which time the Palmers have undertaken no efforts to identify and obtain another source of water." However, the Arells cannot rely on the mere existence of the easement to make a threshold showing that the easement is unreasonably burdensome. See Heartz, 148 N.H. at 332 (finding conclusory allegations that the plaintiff's property "will be damaged" insufficient to invoke the rule of reason). The Arells further argue that the Palmers have "unreasonably exceeded the scope of the [w]ell [e]asement by adding [a] Second Residence to the Palmer property." This argument is also unavailing. The Arells did not allege, and the trial court did not find, any facts showing that the "Second Residence" burdens the Arell property. Therefore, because the Arells have failed to sufficiently allege any

6

burden resulting from the easement, we need not apply the rule of reason to resolve the issues in this case.  See id.

## IV.  Conclusion

For the reasons stated above, we conclude that the trial court erred in granting the Arells' motion for summary judgment.

Reversed and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

7