# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2022-0063, <u>Jeffrey C. Spear & a. v. Richard J. Waite & a.</u>, the court on August 24, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiffs, Jeffrey Spear and Jennifer Kernan, appeal a decision of the Superior Court (<u>Tucker</u>, J.) ruling that the defendants, Richard and Heidi Waite, own a strip of land that abuts the parties' properties in Concord. The plaintiffs also appeal the court's order ruling that their easement rights over that strip of land do not permit them to plant decorative groundcover. We affirm.

I

The following facts are undisputed by the parties or are otherwise supported by the record.

A. <u>The Parties' Properties</u>

The plaintiffs live at 123 School Street and the defendants live at 119 School Street in Concord. The parties' properties, along with 121 School Street, are arranged in a row south of and perpendicular to School Street. 123 School Street is at the north end of the row abutting School Street, and 119 School Street is at the south end of the row, furthest from the street. Adjoining School Street and running alongside the parties' properties is a 30-foot-wide strip of land (the 30' Parcel) containing a shared driveway used by 119, 121, and 123 School Street. Along with the driveway, there are grassy areas within the edges of the 30' Parcel. The plaintiffs' front yard abuts the western edge of the 30' Parcel, and a portion of their front walkway sits within the 30' Parcel. The defendants' residence sits at the southern edge of the 30' Parcel.

The parties' properties and the 30' Parcel are depicted in the following plat, referred to as the Thayer Plan:



Lot 16 corresponds with the plaintiffs' home at 123 School Street, and lot 12 corresponds with the defendants' home at 119 School Street. The defendants also now own lots 8, 9, 10, part of 13, and part of the area labeled "Proposed Street." The 30' Parcel is labeled "Driveway." Two narrower areas are labeled "Passway."

The defendants' property was aggregated by a series of deeds starting in the early 1900s. It was conveyed to them in its current form by Susan Heinecke in 2005. Both the defendants' deed and the plaintiffs' deed contain language granting an easement to "pass and repass" over the 30' Parcel. The parties dispute who owns the land under the easements.

2

B. <u>History of the Defendants' Deed</u>

The title history of the defendants' property begins in the early 1900s. The defendants' property, and the surrounding parcels, were first owned by William Thayer.

1. <u>1900 Conveyance: William Thayer to Edward Niles</u>

In 1900, Thayer conveyed the parcel depicted as lot 12 on the Thayer Plan to Edward Niles. The conveyance predated the recording of the Thayer Plan and did not refer to it, but the deed described the lot 12 parcel by metes and bounds. The 1900 deed included an easement right to "pass and repass over a passway thirty feet wide," referring to the 30' Parcel.

2. <u>1905 Conveyance: William Thayer to Union Realty Company</u>

In 1905, Thayer "conveyed the remaining parent parcel to the Union Realty Company, controlled by Thayer." The parties do not dispute that at this point the remainder of the parent tract, belonging to Thayer, was transferred to Union Realty via quit claim deed. From our review of the deeds, this transfer included the 30' Parcel.

3. <u>1922 Conveyance: Edward Niles to Agatha Chandler</u>

In 1922, Niles conveyed his land, marked as lot 12 on the Thayer Plan, to Agatha Chandler, together with the right to pass and repass over the 30' Parcel.

4. <u>1922 Conveyance: Union Realty Company to Agatha Chandler</u>

Also in 1922, Union Realty conveyed to Chandler "lots 8 and 9 and a portion of lot 10 as shown on [the Thayer] plan." Notably, this 1922 deed is the first deed to refer to the Thayer Plan, which was also recorded in 1922. This deed included the following easement:

> the right to use for passage to and from the premises of said Agatha B.E. Chandler the passway on the northerly and westerly sides of said land conveyed by said Edward C. Niles to said Agatha B.E. Chandler as shown on said plan . . . .

5. <u>1923 Conveyance: Agatha Chandler to Samuel Dunsford</u>

In 1923, Chandler conveyed all of her property to Samuel Dunsford.

### 6. 1926 Conveyance: Union Realty Company to Samuel Dunsford

In 1926, Union Realty made a final conveyance to Dunsford. That deed (the Dunsford Deed) conveyed:

> lots #5, 6, 7, 11 and 13 and a portion of Lot #10 as shown on [the Thayer Plan] . . . together with all the land insofar as the grantor may convey it contained in any proposed street or passway shown on said plan abutting any of said lots . . . . Meaning and intending to convey to the grantee all of the land now owned by the grantor lying in the area bounded by Giles, School and West Washington and Liberty Streets . . . .

The Dunsford Deed conveyed land only and did not convey any easements.

### 7. The Defendants' Current Deed

The defendants acquired their property from Susan Heinecke in 2005. Their deed includes three tracts: Tract I contains lot 12; Tract II contains lots 8, 9, and a portion of 10; and Tract III contains the remaining portion of lot 10 and a part of 13. Relevant to this dispute, Tract III also conveyed "all the land, insofar as it was effectively conveyed to Samuel B. Dunsford by the Union Realty Company, contained in any proposed street or passway, as shown on [the Thayer Plan], abutting any of lots 5, 6, 7, 11 and 13 . . . ." It is the defendants' position that this language incorporating the 1926 Dunsford Deed conveyed title to the 30' Parcel.

## C. The Present Dispute

In October 2015, the plaintiffs planted decorative groundcover in the grassy area of the 30' Parcel abutting their front yard. The defendants, claiming they owned the land, tore out the plantings. The plaintiffs filed a petition to quiet title, seeking, inter alia, a declaration that the defendants do not own the 30' Parcel. The defendants cross-claimed, seeking, inter alia, a declaration that they owned fee title to the 30' Parcel. Thereafter, the parties filed cross-motions for summary judgment, specifically as it related to the issue of ownership.

In the plaintiffs' motion, they did not claim that their deed conveyed title to the land, but instead argued that the defendants' deed did not. The plaintiffs argued, inter alia, that the Dunsford Deed did not convey fee title to the 30' Parcel. They asserted that because the 30' Parcel is labeled "Driveway" on the Thayer Plan, it is not a "passway shown on said plan abutting any of said lots." The defendants argued that the Dunsford Deed did convey title to the 30' Parcel. In support of their position, the defendants submitted an affidavit from Stephan Nix, an attorney and land surveyor, who provided a title

history of the 30' Parcel.  Nix explained that "[i]t is a long accepted surveying and boundary construction industry standard to show a line on a plan dividing an intended separation of property rights," and reasoned that the Thayer Plan depicts the "Passway" and "Driveway" areas as a single parcel of land (the Passway Parcel).  Nix also noted that several deeds from Union Realty granted easements over the 30' Parcel and described that area as a "passway" rather than a "driveway."  He thus concluded that the fee to the 30' Parcel "was included in the Dunsford Deed."  The trial court ruled that the defendants' deed included ownership of the 30' Parcel.

The parties then filed new cross-motions for summary judgment to resolve the remaining claims.  The plaintiffs argued, inter alia, that installing the groundcover and stone walkway were reasonable alterations to the easement area.  The defendants asserted that these alterations were not permitted under the easement.  The court ruled that the plaintiffs' stone walkway was a permissible use of their easement, reasoning that it "is consistent with the easement's purpose to provide . . . the right to pass and repass."  However, the court ruled that the plaintiffs could not plant groundcover in the easement area, reasoning that the proposed plantings were "decorative in nature" and "not reasonable and necessary to [the plaintiffs'] use of the easement as a means of access to and from School Street."

The plaintiffs then filed this appeal.

II

In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law.  Stowell v. Andrews, 171 N.H. 289, 293 (2018).  If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment.  Id.  We review the trial court's application of the law to the facts de novo.  Id.

A. Ownership of the 30' Parcel

The plaintiffs make four arguments in support of their position that the trial court erred when it ruled that the defendants own fee title to the 30' Parcel: (1) "the trial court ignored the longstanding rule that an incorporated plan controls the conveyance in the deed" (capitalization and bolding omitted); (2) the trial court erred in concluding that the "Driveway" and "Passway" area are a single parcel of land; (3) the trial court misinterpreted the 1922 deed from Union Realty to Chandler; and (4) the trial court erred by failing to consider the previous owner's practical construction of the deed.

5

These arguments require us to interpret the deeds in this case, a question of law which we review de novo. White v. Auger, 171 N.H. 660, 663 (2019). In interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time. Id. If the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence. Id. at 663-64. If, however, the language of the deed is ambiguous, extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance may be used to clarify its terms. Id. at 664. When interpreting the parties' intent, we consider the deed as a whole. Id.

The language of a deed is ambiguous if the parties could reasonably disagree as to the meaning of the language. Arell v. Palmer, 173 N.H. 641, 645 (2020). A deed may contain either a patent or a latent ambiguity. Id. A patent ambiguity exists "when the language in the deed does not provide sufficient information to adequately describe the conveyance without reference to extrinsic evidence." Id. A latent ambiguity exists when the language of the deed is clear, but "the conveyance described can be applied to two different subjects or is rendered unclear by reference to another document." Id.

The plaintiffs first argue that the trial court erred by "ignor[ing] the longstanding rule that an incorporated plan controls the conveyances in the deed." (Capitalization and bolding omitted.) It is the plaintiffs' position that because the 30' Parcel is labeled "Driveway" on the Thayer Plan, the trial court was required to find that the 30' Parcel was not conveyed by the language "passway shown on said plan" in the Dunsford Deed. They assert that the Dunsford Deed's "reference to the Thayer Plan means that the terms shown on that plan control as a matter of law." We agree with the plaintiffs that the Dunsford Deed, having incorporated the Thayer Plan by reference, must be read as a whole with the Thayer Plan in order to understand the parties' intent. See Duchesnaye v. Silva, 118 N.H. 728, 732 (1978) (explaining that where a "deed refers with particularity to a recorded map or plat," then "the boundaries set forth on the map should be construed as if written in the deed"); McCleary v. Lourie, 80 N.H. 389, 392 (1922) ("Each deed in the defendants' chain of title contained a specific reference to the Hutchinson plan. The plan thus became an essential part of each conveyance."). The defendants, however, point to different language in the Dunsford Deed — its meaning and intending clause. That clause states: "Meaning and intending to convey to the grantee all of the land now owned by the grantor lying in the area bounded by Giles, School and West Washington and Liberty Streets." The defendants assert that this shows that "Union Realty intended to convey the fee to all the land it owned" within the stated boundaries, "which includes the 30' Parcel." Taken together, the conflicting references in the plain language of the deed and the incorporated plan produce a latent ambiguity. See Arell, 173 N.H. at 645. Accordingly, we look to extrinsic evidence to resolve this dispute. See id.

6

The plaintiffs assert that because "the 30' Parcel/Driveway and the 'passway' were created separately, were treated separately in all the relevant deeds, and occupy distinct areas on the ground," the term "passway" in the Dunsford Deed does not connote a contiguous parcel of land including both the "Passway" and "Driveway" areas of the Thayer Plan. We first disagree that those areas "occupy distinct areas on the ground." The "Passway" and "Driveway" areas abut one another. And the plaintiffs do not challenge Nix's assertion that "[i]t is a long accepted surveying and boundary construction industry standard to show a line on a plan dividing an intended separation of property rights." The plaintiffs correctly note that several historical deeds contain easements limited to specific sections of the Passway Parcel. For example, the 1900 deed from Thayer to Niles granted an easement over a "passway thirty feet wide," referring only to the 30' Parcel. Later, in 1910 and 1912, Union Realty conveyed the parcels shown as lots 14 and 15 on the Thayer Plan (currently owned by a party who is not involved in this case). Those two deeds each contained two distinct easements: "a right to pass and repass over a passway thirty (30) feet wide" and "a right to pass and repass over a passway twenty (20) feet wide." However, all three of these prior deeds refer to a "<u>passway</u>" (emphasis added) regardless of which section of the Passway Parcel they are referring to and, thus, do not conclusively determine the meaning of "passway" in the Dunsford Deed. Rather, this evidence supports the trial court's conclusions that the Dunsford Deed referenced the disputed area as a "passway," and that the "Passway" and "Driveway" areas comprise one contiguous parcel.

The plaintiffs next argue that the trial court misinterpreted the 1922 deed from Union Realty to Chandler. They contend that the term "passway" in the 1922 deed's easement language does not encompass the "Driveway" area, and therefore, the court erroneously concluded that the reference to "passway" in the Dunsford Deed referred to the "Driveway" area. Even if we assume that the 1922 deed did not refer to the "Driveway" area, we disagree that this establishes reversible error in the trial court's interpretation of the Dunsford Deed. Given the meaning and intending clause and the other extrinsic evidence before us, we conclude that Union Realty did not intend to retain ownership over the 30' Parcel while conveying the remainder of its surrounding property. The 1922 deed does not impact our analysis of the Dunsford Deed.

Lastly, the plaintiffs argue that the trial court erred by not adopting the practical construction evidence from the defendants' predecessor in title, Susan Heinecke. The plaintiffs rely on sworn statements from Heinecke explaining that she did not believe that she owned the 30' Parcel when she lived on the property from 1981 until 2005. While admissible extrinsic evidence may include evidence of the conduct of the parties to the deed and of subsequent owners, <u>MacKay v. Breault</u>, 121 N.H. 135, 140 (1981), we are not persuaded that this evidence creates a genuine issue of material fact, particularly in light of the Union Realty deeds from the same time period as the Dunsford Deed, <u>see</u>

LeBaron v. Wright, 156 N.H. 583, 585 (2007) ("A subsequent grantee's interpretation of language in a deed, however, has no bearing upon our interpretation, which focuses upon the intention of the parties at the time of the conveyance."). The trial court did not err by declining to adopt this practical construction evidence.

We conclude that the Dunsford Deed's use of "passway" refers to both the "Passway" and "Driveway" areas on the Thayer Plan, and thus, the trial court did not err by ruling that the Dunsford Deed conveyed ownership over the entire Passway Parcel.

B. Plaintiffs' Rights Under Their Easement

In the alternative, the plaintiffs argue that if the trial court correctly ruled that the defendants own the 30' Parcel, it erred when it ruled that planting decorative groundcover in the easement area exceeded the plaintiffs' rights under the easement. The plaintiffs' deed contains the following express easement: the "right to pass and repass over a passway 30' wide . . . said passway not to be obstructed in any part of its full width, except by the shade trees now standing thereon."

The plaintiffs first assert that "[t]he trial court's analysis was deficient in the first instance because express easement rights arise from and are guided by the dominant tenant's beneficial enjoyment and convenience, not by bare necessity of use." They argue that "an alteration or improvement is limited or restricted only if it is so substantial as to result in the creation and substitution of a different servitude" (citation omitted), and that the trial court erred by making no findings that the proposed alterations create a different servitude. They contend that the easement over the 30' Parcel has "remained an integral part of 123 School Street's front yard, the face the home presents to the world" and, therefore, "[a] landscaped front walk embodies and furthers that servitude; it does not substitute a different servitude."

We agree with the plaintiffs that "[t]he test to determine the right to make a particular alteration is whether the alteration is so substantial as to result in the creation and substitution of a different servitude from that which previously existed." Duxbury-Fox v. Shakhnovich, 159 N.H. 275, 284 (2009). The trial court determined that "planting groundcover in lieu of grass is not necessary to serve the purpose for which the easement was granted." It determined that the proposed groundcover was "decorative in nature," whereas the easement served as "a means of access to and from School Street." We interpret the trial court's order as concluding that these uses require different servitudes, and we agree. The plaintiffs do not hold an easement to use the 30' Parcel as their front yard. They hold the right to "pass and repass" over that area. Planting decorative groundcover to extend their front yard is qualitatively different from passing and repassing. It is an additional, distinct burden on

8

the servient estate.  Thus, the trial court did not err by concluding that the plaintiffs' proposed use changes the easement.

Additionally, the plaintiffs argue that "the trial court failed to apply the rule of reason by considering all of the surrounding circumstances." (Capitalization and bolding omitted.)  In determining permissible use of an easement, courts are guided by the principle of "reasonable use."  Boston & Me. Corp. v. Sprague Energy Corp., 151 N.H. 513, 519 (2004).  The principle of "reasonable use" provides that the rights of the parties to a right-of-way are questions of fact that must be determined in light of the surrounding circumstances, including the location and uses of both parties' property and by taking into consideration the advantage of one owner's use and the disadvantage to the other owner caused by that use.  Delaney v. Gurrieri, 122 N.H. 819, 821 (1982).

The plaintiffs assert that their plantings are reasonable because "the easement has visually and functionally comprised part of [their] front yard" since its creation, and they have "exclusively maintained" the grassy areas of the 30' Parcel.  They contend that their easement rights "therefore necessarily include[] the types of improvements and alterations that are routinely performed and appear in a front yard — including the ability to alter the easement to make the front walk to their home function and appear in a convenient and pleasing way."

We are unpersuaded.  As stated above, the plaintiffs do not hold an easement to use the 30' Parcel as their front yard; they hold an access easement.  The plaintiffs emphasize the visual benefits of their plantings, but their easement does not grant them aesthetic rights.  They also point to evidence that the owners of 123 School Street have historically cut and fertilized the grass, raked leaves in the fall, and kept the walkway clear of ice and snow, but these are maintenance activities.  The plaintiffs do not contend that their decorative plantings are part of the maintenance of the easement.  Nor do they contend that the plantings are reasonably necessary to maintain the easement.  Thus, the plaintiffs have not established that their proposed plantings relate to their right to pass and repass.  Because the proposed use is unrelated to the easement's purpose of passing and repassing, the trial court did not err by concluding that it is not a reasonable use of the easement.

Affirmed.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

9