# CHESHIRE,

## JULY TERM, A. D. 1857.

CHAPIN AND WIFE *v.* SCHOOL DISTRICT NUMBER TWO IN
WINCHESTER.

A gift of real or personal estate to promote education is a charity.

A corporation may be the trustee of a charity, provided the trust be not repugnant to or inconsistent with the proper purposes for which the corporation was created.

If a corporation be incompetent to hold as a trustee, that will not make void the devise or grant, but equity will appoint a new trustee to carry out the objects of the charity.

A variation from the strict legal designation in a devise or conveyance to a corporation for charitable purposes, will not make void the devise or grant, provided what the corporation meant can be sufficiently ascertained from the terms used.

In order to work a forfeiture of a grant, there must be a substantial diversion of the property and its income, contrary to the terms of the grant, and against the intention of the grantor.

WRIT OF ENTRY. Plea, nul disseizin.

The cause was committed to a commissioner, who made report in substance as follows:

Both parties claimed title in the demanded premises under one Daniel Hawkins.

On the 24th day of August, 1855, the said Horace Chapin, for himself and Ann, his wife, who was a grand-daughter of Hawkins, and heir at law to one eighteenth part of his estate, duly entered upon and claimed the demanded premises in her right.

The said Daniel Hawkins, by his deed dated May 8, 1806, "for and in consideration of helping to support and maintain a school for the purpose of teaching the art of reading, writing and arithmetic, in the second school district in the town of Winchester," conveyed "unto that part of the inhabitants of Winchester aforesaid that now does or hereafter may inhabit within the said second school district in said Winchester forever, for the sole purpose of supporting a school in said district, as above said," the tract of forty acres first described in the plaintiff's writ, to have and to hold to " the said inhabitants of said second school district, and their successors forever, to be appropriated to the benefits of teaching a school, as above said," with covenant of warranty for himself and his heirs forever, against the lawful claims and demands of all persons.

The said Hawkins, by another deed, dated July 20, 1822, in consideration of one dollar paid by William Allen, agent for the second school district in Winchester, and other valuable considerations moving him thereto, conveyed " unto him, the said William Allen, or to his successor as agent for said second school district forever, two pieces of land lying in said Winchester," (one being the second tract described in the plaintiff's writ,) " the profits and rents of which are forever to be applied for the benefit of the inhabitants of said district, for building a meeting-house thereon, and toward the support and maintenance of worthy ministers of the gospel of our blessed Lord and Saviour Jesus Christ, the Lamb of God that taketh away the sin of the world ;" " the first piece whereon the house is to stand, beginning," &c. To have and to hold to " him the said William, and his successor as agent for said district, for the purposes aforesaid," with covenant of warranty, as in the deed first named.

The defendants, under said deeds, held uninterrupted possession of the granted premises up to the time of the entry by the plaintiff, and have since remained in possession thereof.

At the date of the deed of 1822 the district had a school house. About 1828 a two story building was erected by the district on the lot last described in the plaintiff's writ, being a

tract conveyed by the deed of 1822, and the ground prepared and fenced. The lower story was finished for two school rooms, in which schools have been regularly kept by the district, and reading, writing, arithmetic, and other higher branches suitable for district schools, have been taught. The old school-house was sold, and its avails used toward a new one. The upper story of the building was a hall, furnished with pews or slips, and a pulpit suitable for public worship, and of sufficient size for that purpose. The timber for the building was taken about equally from said forty acre lot and a ministerial lot, granted by the deed of 1822, but not in controversy in this suit. There was a sale by said district, in 1826, of timber from said forty acre lot, to the amount of $206, which defrayed part of the expense of the building. Its entire cost did not appear.

After the hall was finished the pews were sold or rented for a time, and the proceeds applied to the support of preaching. For some years preaching was had there through the day on Sunday, for a part of each year ; but afterward, a meeting-house having been provided at Winchester Village, distant about two miles, day services were held there, and third or 5 o'clock meetings at the hall. It has been the only public place used for religious exercises in that village, and has always been used when wanted for such purposes. The population of the village is from two hundred and fifty to three hundred. The annual income from the lands in the deed of 1822, was $3.70. All that appeared to have been received from these rents up to 1838 was $13.02. From the income of these lands small sums were from time to time paid for repairs of the hall. The other expenditures from it, so far as appeared, were for preaching, up to 1854. In that year the fund (including $60.52 received for railroad damages,) amounted to $82.02, of which $75.71 was expended for settees, substituted for the slips (which were taken out) in the hall. The preaching above mentioned was by worthy ministers of the gospel. Prior to August, 1855, said hall had occasionally been let by the agents of the district under its authority. There were thus held there a course of free lectures on electricity ;

Chapin and Wife *v.* School District.

singing schools for church music; an exhibition of singing by Indians, of a serious character; a lecture on abolitionism and religious topics, by a colored man; a magic lantern exhibition, with comic singing, for which pay was taken at the door; a lecture on psychology, and lectures on phrenology, with examination of heads, for which pay was taken; and a school exhibition of dialogues. The sums received for use of the hall on these occasions were credited to the ministerial fund.

In 1854 it became necessary, from the building of the railroad, to raise said building. This was done by the district, and needful repairs made and grading done, and the lot was fenced. The expense was principally defrayed by a sale of timber from said forty acre lot to the amount of $450.

If the court, upon the above facts, should be of opinion that the demanded premises, or either tract thereof, were forfeited to the heirs of Daniel Hawkins, then the commissioners found that the defendants did disseize the plaintiffs, as alleged in the plaintiff's declaration accordingly; otherwise the defendants did not so disseize them.

The action having been commenced in the Supreme Court, and entered at the trial term, the questions arising upon the report of the commissioner were reserved and assigned to the determination of the whole court.

*Bennett & Cushing,* for the demandants.

1. The words of the deed make a condition. *Hayden* v. *Stoughton,* 5 Pick. 528; Coke Litt. 204, a; Comyn's Dig., Condition, A., 4.

2. The conditions have been broken.

3. The deeds are void for want of a grantee. Rev. Stat. 1843; Act of July 6, 1827; Act of July 1, 1819, Powers of Towns; Act of February 8, 1791.

*Wheeler & Faulkner,* for the defendants.

If the demanded premises are to be considered as conveyed to the district in trust for the inhabitants thereof, the court will

uphold the trusts, even if it should be held that the district has not the legal capacity to act as trustee. 1 Rich. (S. C.) Ch. 99 ; 2 Story's Eq. Jur., secs. 1059, 1060. "It is a rule in equity which admits of no exception, that a court of equity never wants a trustee." 2 Story's Eq. Jur., sec. 976.

The grantor's intentions sufficiently appear in the deeds, and there is no uncertainty either in the subject or object of the grants. The power to take property by grant or bequest, to be applied to the purposes for which school districts are created, is an incident to the corporation, and is not dependent on the express provisions of the statute. The provision in Rev. Stat., chap. 70, sec. 1, is merely declaratory. The court will not allow the charities to be defeated upon any nice distinction as to the powers of the trustee. The case shows that the trusts have been performed. There has been no forfeiture.

EASTMAN, J. The only question presented by the commissioner to whom this case was referred, relates to the forfeiture of the estate. Other questions, however, have been raised by the argument, as arising upon the facts reported ; and these it is perhaps necessary to consider, in order fully to determine the rights of the parties.

The position that the estate has been forfeited, rests upon the ground that the conveyances were upon conditions, and that these conditions have not been kept ; or else that the estate conveyed was one upon limitation.

The conveyance of the forty-acre lot, on the 8th of May, 1806, was "in consideration of helping to support and maintain a school for the purpose of teaching the art of reading, writing and arithmetic." It was conveyed to the inhabitants of the district "forever;" "to have and to hold to the said inhabitants and their successors forever, to be appropriated to the benefits of teaching a school, as above said."

The other conveyance, in 1822, was to Allen, as agent of the district, and to his successor "forever;" the profits and rents to be "forever" applied for the benefit of the inhabitants of the

district, "for building a meeting-house thereon, and toward the support and maintenance of worthy ministers of the gospel." Both conveyances contained covenants of warranty for the grantor and his heirs, against the lawful claims and demands of all persons.

It would seem evident, from an examination of these deeds, that the estate conveyed was not one upon limitation. The usual and apt words of limitation, such as "while," "so long as," "until," "during," &c., are none of them to be found in the conveyances; and there does not appear to be any thing in the phraseology used, showing that an estate upon limitation was intended to be conveyed, but the reverse. The conveyances were to the grantees and their successors "forever."

It would seem to be equally clear that these were not grants upon condition precedent, for there was no act to be done by the grantees, no money to be paid, or other condition to be performed prior to the deed taking effect. But were they grants upon condition subsequent, and so defeasible upon the breach of the conditions?

A subsequent condition is one which operates upon an estate already created and vested, and renders it liable to be defeated. Thus, if a man grant an estate in fee simple, reserving to himself and his heirs a certain rent, and that if such rent be not paid at the times limited it shall be lawful for him and his heirs to re-enter and avoid the estate; in such case the grantee and his heirs have an estate upon condition subsequent, which is defeasible if the condition be not strictly performed. Litt., sec. 325; 2 Black. Com. 154; 4 Kent's Com. 125.

The usual words of a condition subsequent are, "so that," "provided," "if it shall happen," or "upon condition." The latter, according to Lord Coke, is the most appropriate. No form of expression, however, is essential to create a condition, and if it is manifest from the terms of the grant that it was made upon condition, the estate will become defeated if the condition is not kept. 2 Black. Com. 154.

Conditions subsequent are not favored in law, and are con-

strued strictly, because they tend to destroy estates. Co. Litt. 205, b. ; 219, b. If it be doubtful whether a clause in a deed is a condition or a covenant, the courts will incline against the condition, for a covenant is far preferable. 4 Kent's Com. 132. Kent says that the distinctions on this subject are extremely subtle and artificial ; and the construction of a deed, as to its operation and effect, will, after all, depend less upon artificial rules than upon the application of good sense and sound equity to the object and spirit of the contract in the given case. That the intention of the party to the instrument is of controlling efficacy.

In these deeds there are none of the usual words of a condition. The conveyances were not made with the proviso that the rents and profits should be applied as therein specified, otherwise to be void ; nor were they expressed to be " upon condition" that they should be so applied. The intention of the grantor appears to have been to convey an estate in trust in both deeds ; the first being for the benefit of schooling, and the second to aid in the support of the ministry in the district. And we do not find any thing in either of the deeds that need to militate with this construction ; nothing calling for that strict interpretation which is resorted to in many reported cases to defeat a condition ; but on the contrary, this seems to be a plain and consistent construction, and warranted by the words of the deeds.

But even assuming that these conveyances were upon conditions subsequent, we do not think that the conditions have been broken, so as to work a forfeiture of the estate.

The first conveyance was "for and in consideration of helping to support and maintain a school." From the lot thus conveyed no income has been realized, but the district have on three occasions taken timber therefrom, to make and repair their schoolhouses, in which schools of the kind specified in the deed have been kept. Now, although this was not strictly an application of the profits of the grant to " teaching the art of reading, writing and arithmetic," yet it was an application to the " purpose of supporting a school in the district." There could be no

school without a building in which to keep it, and to take a por-
tion of the timber from the lot for this purpose would not seem
to be contrary to the intention of the grantor.    To construe such
acts as working a forfeiture would be straining the terms of the
deed to defeat the grant.    It would be favoring the condition
instead of applying to it the general rule of a strict construction.
It is to be observed, also, that there is no restriction upon the
grantees against conveying the land ; and an estate of freehold
upon condition may be conveyed, though the estate will continue
defeasible until the condition be performed, or destroyed, or re-
leased, or barred by the statute of limitations, or by estoppel.
4 Kent's Com. 125 ; 2 Black. Com. 124.

With regard to the conveyance of 1 822, the profits and rents
were to be forever applied for the benefit of the inhabitants of
the district, " for building a meeting-house thereon, and toward
the support and maintenance of worthy ministers of the gospel."
Upon this lot a building has been erected, the lower story of
which has been occupied for school purposes, and the upper as
a hall for divine worship of the character specified in the deed.
The rents and profits derived from the lot have been applied to
the repairing of the hall and for the support of preaching therein.
From the number of inhabitants in the district and other facts
stated by the commissioner, this hall would seem to be a build-
ing suitable and proper for worship, and within the intention of
the grantor ; and the rents and profits derived from the land
would appear to have been applied in accordance with his design.

The occasional occupation of the hall temporarily, for lectures,
singing schools, &c., as stated by the commissioner, was not a
permanent and substantial appropriation of the building to pur-
poses not contemplated by the grant.    In order to work a for-
feiture there must be an essential diversion of the property and
its income, contrary to the terms of the grant, and against the
intention of the grantor.

In *Woods* v. *The County of Cheshire*, a case decided by the
Superior Court but not yet reported, the grant was of a tract of
land on which to build a court house ; the land to be held so

long as the building should be occupied for that purpose, and no longer. A building was erected and occupied as a court house for a number of years, but a room in it was afterward sold, and finally used as a barber's shop. It also appeared that the court room was occasionally used for lyceum lectures, concerts, and for other temporary purposes. It was held that this was an estate upon limitation, and that the grant was forfeited by the conveyance and occupation of the room as a shop; but that the occasional and temporary use for concerts, lyceums, &c., would not defeat the grant. That case is an authority in the present one, so far as to show that the temporary use of the building in the manner specified would not work a forfeiture.

If, then, the only question in the case was whether the grants were forfeited by a misapplication of the property, we should have no difficulty in ordering judgment for the defendants. But there are other questions which require examination.

It is said that the deeds are void for want of a grantee, and that there is no party described competent to take the land. We have already expressed the opinion that it was the intention of the grantor to convey these lands in trust, for the benefit of the district; the first grant being to aid and foster the schools of the district, and the second for the support of the ministry. Both grants were for charitable purposes, and the law as applicable to charities may be applied to both.

In *Hadley* v. *Hopkins Academy*, 14 Pick. 253, *Shaw*, C. J., says, that it is a settled rule in equity that a gift of real or personal estate, to promote education, is a charity. It is also considered as a settled rule that such a gift to a charitable use is to receive a most liberal construction, and if the trustees pervert the fund to other uses, or even if they refuse to accept or execute the trusts, the charity itself shall not fail, nor will the property revert to the donor; but it will be competent for a court of chancery to direct, in the former case, that the trusts shall be executed, and in the latter that new trustees shall be appointed, in whom the legal estate shall vest, to be held in trust for the purposes of the charity. That it is quite clear that if there is

no party to take the legal estate, no forfeiture and no reversionary interest can be claimed by the donor or his heirs.

A corporation may be a trustee; and where it has a legal capacity to take real or personal estate, there it may take and hold it upon trust, in the same manner and to the same extent as a private person may. If, however, the trust be repugnant to or inconsistent with the proper purposes for which the corporation was created, that may furnish a ground why it may not be compelled to execute it. But that will be no reason to declare the trust itself void, if otherwise unexceptionable, but will simply require a new trustee to be substituted by the proper court, possessing equity jurisdiction, to enforce and perfect the objects of the trust. *Vidal* v. *Girard's Executors*, 2 Howard 188; *Sonley* v. *The Clockmakers' Company*, 1 Brown's Ch. 81; *Green* v. *Rutherford*, 1 Vesey 462.

If the corporation be incompetent to execute such trusts, the heirs of the devisor can not take advantage of such incompetency. And if the trustee misuse or misapply the fund, equity will enforce the execution of the trust, and it will be no forfeiture of the estate to the donor or his heirs. To hold that it would be, would defeat and not promote the design of the trust. 2 Story's Com. on Eq., sec. 1191; *Vidal* v. *Girard's Executors & als.*, 2 Howard 127.

Where the uses are charitable and the grantor is competent to convey, the court will aid defective conveyances. *Attorney General* v. *Tancred*, 1 Eden 10; 1 W. Black. 91; 2 P. Wms. 119; 2 Vernon 342; 2 Kent's Com. 286.

*Duke* lays down the doctrine thus: That a disposition of lands to charitable uses is good, " albeit there be defect in the deed, or in the will, by which they were first created and raised; either in the party trusted with the use, where he is misnamed, or the like; or in the party for whose use, or that is to have the benefit of the use; or where they are not well named, or the like; or in the execution of the estate, as where livery of seizin or attornment is wanting, or the like." Duke on Charit. Uses 84, 85; Bridgman on Duke 355; 2 Story's Com. on Eq., sec. 1171.

To return to the facts in this case : The first deed was a gift to " that part of the inhabitants of Winchester that now does or may hereafter inhabit within the said second school district ;" to hold " to the said inhabitants of said school district and their *successors* forever."

The inhabitants and their successors could not take and hold as individuals. The gift was not to the inhabitants and their *heirs,* but to them and their successors. The intention would seem to be plain that the inhabitants should take and hold in their corporate capacity as a school district, and we think they could so take and hold.

The inhabitants of a town or county, the inhabitants of a parish or school district, is not an uncommon mode of describing the corporation. Oliver's Precedents 48 ; *Inhabitants of Bangor* v. *Inhabitants of Brunswick,* 33 Maine 352 ; *Inhabitants of the First Parish in Sudbury* v. *Jones,* 8 Cushing 184 ; *Hayden* v. *The Inhabitants of Stoughton,* 5 Pick. 528 ; *The Inhabitants of School District Number Six in Natick* v. *Morse & als.,* 8 Cushing 191.

The inhabitants of a school district, when spoken of in their collective capacity, as a permanent body, having successors, and possessed of the power to hold land forever, must mean the corporation. A variation from the legal designation in a devise or conveyance to a corporation will not make void the devise or grant, provided what the corporation meant can be sufficiently ascertained from the terms used. *Inhabitants of the First Parish in Sutton* v. *Cole,* 3 Pick. 232 ; *Case of the Chancellor of Oxford,* 10 Coke 57, b ; *Foster v. Walter,* Croke Eliz. 106 ; *Vidal* v. *Girard's Executors,* 2 Howard 127 ; *Whitman* v. *Lex,* 17 Serg. and Rawle 88. We think that the designation of the grantees in this deed will answer.

The district was a good trustee to hold the land under this deed. The object of the charity was " to help support and maintain a school for the purpose of teaching the art of reading, writing and arithmetic." This was within the general scope of the purpose for which school districts are established by law.

The ordinary district school would be such as is mentioned in the declaration of trust, and the teachers must be qualified as the law requires, to teach those studies. The money for that object would be applied in the same way as the money raised by law for the general support of the school. The officers of the district would be competent, in the ordinary course of their duties, to see that the trust was executed. And it would not seem that there could be any more difficulty in compelling the execution of this trust, than in enforcing the performance of the public duties required by law of the district and its officers.

That towns have the power to modify and change the limits of school districts, is no valid objection to this gift. The legislature has the same power, in respect to the towns themselves, to change their limits, and yet such *quasi* corporations are good trustees for a charity within the general scope of their corporate powers and duties. When the district shall be so changed as to deprive it of the power to hold the land and execute the trust, it will be time enough to inquire how the charity shall be upheld.

The second deed presents a case of more difficulty. Waiving the question of the want of proper designation in the grantee, and admitting that the description in the deed is sufficient to show an intention to give the land to the district in trust, the question arises, could the district execute such a trust ? The charity is not within the general scope of the design with which school districts are created. A school district has no officers charged by law with duties corresponding to the nature of this trust ; and it is difficult to see how the court could compel the district or its officers to execute the trust. It would be no part of the duty of any officer provided by law for a school district, however willing he might be, to see that the fund was applied toward building a meeting-house or supporting a worthy minister of the gospel. And the district could not be compelled to do what is clearly beyond the object of the corporation and the power of its legal officers.

But the beneficiaries are sufficiently ascertained, and, upon the authorities and principles stated, such a charity will not be

allowed to fail for want of a trustee. The grant, though defective at law, will be sustained in equity; and on a proper application to the equity jurisdiction of the court, it would be their duty to appoint a trustee, and the suit at law would be stayed till the application could be made and decided.

The result, therefore, is, that, as to the first lot, the suit can not be maintained; and as to the second, should the plaintiffs pursue the action further, equity may interfere to stay the proceedings and uphold the trust.

With these views we shall dismiss the case from this docket.