NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2020-0370

CARTER COUNTRY CLUB, INC.

v.

CARTER COMMUNITY BUILDING ASSOCIATION

Argued: May 27, 2021
Opinion Issued: December 28, 2021

Gallagher, Callahan & Gartrell, P.C., of Concord (Samantha D. Elliott and Matthew V. Burrows on the brief, and Samantha D. Elliott orally), for the plaintiff.

Orr & Reno, P.A., of Concord (Jeremy D. Eggleton on the brief and orally), for the defendant.

Gordon J. MacDonald, attorney general (Thomas J. Donovan, director of charitable trusts), filed no brief.

HOURAN, J., retired superior court justice, specially assigned under RSA 490:3.  The defendant, Carter Community Building Association, appeals orders of the Superior Court (MacLeod, J.) granting summary judgment to the

plaintiff, Carter Country Club, Inc., on the plaintiff's petition to quiet title to a parcel of property in Lebanon. The defendant also appeals the denial of its motion to amend its counterclaim to add a claim for declaratory relief. We affirm in part, vacate in part, and remand.

## I. Facts

The following relevant facts are supported by the record or are otherwise undisputed by the parties. In July 1986, Carter Country Club, Inc. (CCCI), an entity unrelated to the plaintiff, conveyed the property at issue to the Trustee of the Farnum Hill Trust by deed (Farnum Hill deed). The Farnum Hill deed contained a provision concerning the maintenance and operation of a nine hole golf course on the premises, as follows:

> The above described premises shall be SUBJECT, HOWEVER, to the following RESERVATION, CONDITIONS, AND RESTRICTION which shall run with the land and be binding upon the Grantee, and his successors and assigns:

> At all times, in perpetuity, a nine hole golf course shall be maintained and operated on the premises . . . . The location of the property set aside for and containing the golf course shall be referred to as the "golf course area".

> . . . .

> If at any time the above requirements for maintenance and operation of a nine hole golf course are not met for a period of one year, the title to the golf course area . . . shall, at the option of the Grantor or its successors or assigns, revert to Grantor, or its successors or assigns.

> This restriction and the right of reversion shall be binding upon and shall inure to the benefit of, Grantor and Grantee and their respective heirs, executors, administrators, successors and assigns as a covenant that shall run with the land, in perpetuity.

In December 1986, CCCI conveyed by deed (December deed) the rights it reserved in the Farnum Hill deed to the defendant, a local non-profit organization. The December deed purported to convey: "All and the same right, interest and title, in and to the reversionary interest retained by the Grantor in the [Farnum Hill deed]." The December deed also recited the entirety of the above-quoted golf-course restriction as set forth in the Farnum Hill deed. Shortly thereafter, CCCI dissolved.

In November 1989, the property was conveyed to a private corporation. In September 1990, the corporation brought an action to quiet title, naming as defendants CCCI's shareholders and "[a]ll other unknown persons who may claim or have any interest, right or estate in or to" the property. The defendant moved to intervene. In September 1991, the Superior Court (Perkins, J.) issued an order declaring that the corporation's title was "free and clear of all rights or interests" of CCCI's shareholders and ordering that any issues pertaining to the defendant's motion to intervene would be addressed in further proceedings. In February 1994, the corporation and the defendant entered a stipulation and docket markings stating that the court's September 1991 order "shall remain in full force and effect" as to CCCI's shareholders, but "[a]s to all other matters, judgment shall be entered for neither party, without prejudice." Thus, the litigation settled without resolving the issue before us — whether the defendant had an interest in the property.

At some point thereafter, the plaintiff took title to the property. In August 2018, the plaintiff brought an action to quiet title, naming the defendant as a party and claiming that the conveyance of CCCI's future interest in the property to the defendant was void. The plaintiff's theory was that the Farnum Hill deed created a right of reentry retained by CCCI, which, the plaintiff contended, was not freely transferable. The plaintiff also argued that the defendant's interest in the property, if any, violated the rule against perpetuities and was an unreasonable restraint on alienation. The defendant counterclaimed, seeking a declaration that it had an enforceable future interest in the property.

The parties filed cross-motions for summary judgment. The defendant also filed a motion to amend its counterclaim, seeking to add an alternative declaration of its right to enforce the golf-course restriction as a restrictive covenant. Following a hearing on the parties' motions, the Superior Court (MacLeod, J.) issued an order granting, in part, the plaintiff's summary judgment motion and declaring that the plaintiff held title to the property in fee simple subject to a condition subsequent. Relying solely upon the language of the Farnum Hill deed, the trial court concluded that the interest held by CCCI was a right of reentry that, under both the common law and the Restatement (First) of Property, was not freely transferable. See Restatement (First) of Property §§ 160, 161(c) at 574, 578 (1936). The court further determined that because CCCI's right of reentry was not transferable to the defendant, CCCI's interest in the property remained vested in CCCI, meaning that the plaintiff held title to the property in fee simple subject to a condition subsequent. The court also denied the defendant's motion to amend, reasoning that because the conveyance from CCCI to the defendant was void, the defendant's proposed amendment failed to state a claim upon which relief could be granted.

The plaintiff then filed a motion for clarification, noting that it sought to quiet title only as against the defendant and did not ask the court to decide

3

whether CCCI retained an interest in the property. The court denied the motion, but ordered the plaintiff to identify any other parties "who have or may have some estate or interest in" the property. (Quotation omitted.) The plaintiff filed a response, asserting, in relevant part, that no other parties had an interest in the property because the September 1991 order, coupled with the February 1994 stipulation and docket markings, quieted title to the property as against CCCI and its shareholders. Thus, the plaintiff asked the court to reconsider its ruling that the plaintiff's title was subject to a condition subsequent. The court agreed with the plaintiff and granted the motion, concluding that the plaintiff held title in fee simple absolute. The court denied the defendant's motion for reconsideration, and this appeal followed.

## II. Analysis

The defendant first challenges the trial court's ruling that the Farnum Hill deed created an inalienable right of reentry that was retained by CCCI, thereby rendering the conveyance of CCCI's future interest in the property to the defendant void. According to the defendant, under the Farnum Hill deed, CCCI retained a possibility of reverter, rather than a right of reentry, which CCCI was free to transfer to the defendant. The plaintiff, on the other hand, counters that the trial court correctly interpreted the language of the Farnum Hill deed as creating an inalienable right of reentry that was not freely transferable to the defendant.

In reviewing a trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party. Boyle v. City of Portsmouth, 172 N.H. 781, 785 (2020). If our review of the evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. Id. We review the trial court's application of the law to the facts de novo. Id.

Resolving the defendant's appeal also requires that we interpret the meaning of the Farnum Hill deed's language. The interpretation of a deed is a question of law, which we review de novo. White v. Auger, 171 N.H. 660, 663 (2019). When interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time. Id. If the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resorting to extrinsic evidence. Id. at 663-64. If, however, the language of the deed is ambiguous, extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance may be considered to clarify its terms. Id. at 664. The language of a deed is ambiguous if the parties could reasonably disagree as to its meaning. Arell v. Palmer, 173 N.H. 641, 645 (2020).

4

When interpreting the language of a deed, we consider the deed as a whole.  See White, 171 N.H. at 664.  We generally disfavor interpreting deed conditions in a manner that would cause a forfeiture of the property upon breach of such conditions.  Id.  However, we adhere to the guiding principle that the intent of the parties should be effectuated whenever possible.  Id.  We also remain mindful that formalistic requirements in real estate conveyancing have largely given way to effectuating the manifest intent of the parties, absent contrary public policy or statute.  Id.

We begin by summarizing the distinction between rights of reentry and possibilities of reverter.[1]  A right of reentry is an interest created and retained by a grantor with its conveyance of property that is subject to a condition subsequent.  Restatement (First) of Property § 155, at 532-33; see Red Hill Outing Club v. Hammond, 143 N.H. 284, 287 (1998) ("A fee simple subject to condition subsequent is a conveyance of land in which the grantor expressly retains the right of re-entry upon breach of a stated condition, the exercise of which results in a forfeiture of estate for the grantee.").  A possibility of reverter, by contrast, is "a future interest retained by a grantor after conveying a fee simple determinable, so that the grantee's estate terminates automatically and reverts to the grantor if the terminating event ever occurs."  Black's Law Dictionary 1284 (9th ed. 2009); see id. at 692 (defining "fee simple determinable" as "[a]n estate that will automatically end and revert to the grantor if some specified event occurs").  The primary distinction between rights of reentry and possibilities of reverter "is that in the former the estate in fee does not terminate until entry by the person having the right, while in the latter the estate reverts at once upon the occurrence of the event by which it is limited."  Lyford v. Laconia, 75 N.H. 220, 225 (1909); see 28 Am. Jur. 2d Estates § 189, at 243 (2011) ("An automatic reversion in the grantor . . . differentiates a possibility of reverter from a [right of reentry].").

Another distinction between possibilities of reverter and rights of reentry is that, under the Restatement (First) of Property, possibilities of reverter are transferable inter vivos, while rights of reentry are not.  Restatement (First) of Property §§ 159-61, at 570-74.  Although we have observed, in dicta, that "it is at least doubtful whether a right of entry before breach is transferable by will or deed," Ashuelot National Bank v. Keene, 74 N.H. 148, 151 (1907), we have not yet had occasion to adopt the approach set forth in the Restatement (First) of Property.  However, because neither party disputes that the approach set forth in

---

[1] We note at the outset of our analysis that the parties do not ask us to consider the potential applicability of the Restatement (Third) of Property: Wills and Other Donative Transfers § 25.2 cmt. d at 457-58 (2011) and its analysis of reversions and remainders, which to a large extent would do away with distinctions between rights of reentry and possibilities of reverter.  Accordingly, this case does not present us with an opportunity to consider whether or to what extent we should adopt the approach set forth in the Restatement (Third) of Property: Wills and Other Donative Transfers § 25.2 cmt. d at 457-58.

the Restatement (First) of Property applies in this case, we need not decide that issue here. Therefore, we will assume, for the purposes of this appeal, that possibilities of reverter are transferable inter vivos and rights of reentry are not.

Accordingly, to determine whether CCCI's future interest in the property was transferable to the defendant, we must decide whether the Farnum Hill deed created a right of reentry or a possibility of reverter. The defendant argues that the word "revert" and the term "right of reversion" in the Farnum Hill deed demonstrate that the original parties intended to create a possibility of reverter. The defendant also points to the use of "successors" and "assigns" in the deed as evidence of the original parties' intent to confer an interest that CCCI could freely transfer to the defendant. The defendant argues in the alternative that, even if the language of the Farnum Hill deed is ambiguous, extrinsic evidence confirms the original parties' intent to create a freely transferable possibility of reverter. The plaintiff counters that the Farnum Hill deed unambiguously created a right of reentry because the phrase "at the option of" in the deed indicates that the parties did not intend for title to transfer automatically upon breach of the golf-course restriction.[2]

The defendant argues that the Farnum Hill Deed must be read to reserve a possibility of reverter because it "makes no mention of a 'power of termination' or 'right of reentry,'" but, rather, "unambiguously names the interest reserved to the grantor as a 'right of reversion.'" We are not persuaded. Although we agree that the deed does not contain the terms "power of termination" or "right of reentry," "[n]o form of expression . . . is essential to create a condition." Chapin and Wife v. School District, 35 N.H. 445, 450 (1857). Nevertheless, the language used "is of importance in arriving at the manifest intention of the parties which is the determinative factor." North Hampton School District v. Society, 97 N.H. 219, 220 (1951).

"The words 'so long as,' . . . 'while', 'until' and 'during' are the usual and apt words to create a limited estate such as a determinable fee . . . ." Id. at 220-21. Such "words of limitation . . . show[] that an estate upon limitation was intended to be conveyed." Chapin and Wife, 35 N.H. at 450. In other words, they indicate the parties' intent that the estate is to terminate automatically upon the happening of the stated condition. See id. (noting that the deeds in question contained nothing "showing that an estate upon limitation was intended to be conveyed," but actually showed "the reverse" where "[t]he conveyances were to the grantees and their successors 'forever'").

---

[2] The plaintiff also asserts that the defendant "waived any issue concerning an alleged ambiguity in the deeds or the need to consider" extrinsic evidence of the parties' intent. Because we conclude that the deed is unambiguous, we need not address the plaintiff's waiver argument.

The Farnum Hill Deed contains none of the usual words of limitation, nor anything else indicating an intent that the grantee's estate should terminate automatically if the restrictions regarding operation of a golf course were not met. Rather, the deed contains the following language: "SUBJECT, HOWEVER, to the following RESERVATION, CONDITIONS, AND RESTRICTION." Such language is consistent with the creation of a condition subsequent. See id. ("The usual words of a condition subsequent are, 'so that,' 'provided,' 'if it shall happen,' or 'upon condition.'"); see also Cummings v. United States, 409 F. Supp. 1064, 1068 (M.D.N.C. 1976) (examining deed that "conveys land 'on express condition that' and 'on condition that' certain events occur or do not occur and contains what was intended to have been a reverter clause" and concluding that "[t]his language is more indicative of a fee simple subject to a condition subsequent than it is of a fee simple determinable").

The defendant nevertheless contends that the terms "revert" and "right of reversion" signify a determinable fee and corresponding possibility of reverter. It argues that "[t]he language 'if at any time . . . shall revert' conveys a defeasible interest, not a right of reentry." Because this argument ignores language in the deed compelling a contrary conclusion, we need not decide whether the quoted language can, without more, constitute a possibility of reverter. Compare Pfeffer v. Lebanon Land Dev. Corp., 360 N.E.2d 1115, 1120 (Ill. App. Ct. 1977) (concluding that phrase "'will revert' [in deed] necessarily implie[d] the existence of a right of re-entry or power of termination" even though the "same language is also consistent with the creation of a determinable fee" because the defeasance provision contained no language of limitation); Unknown Heirs of Devou v. City of Covington, 815 S.W.2d 406, 409, 411, 413 (Ky. Ct. App. 1991) (examining deed stating that, should the grantee fail or refuse to perform the stated conditions, "the land . . . shall revert back, at their option" to two named grantors, and concluding that "the document as a whole provides for a right of re-entry upon condition broken rather than a possibility of reverter"), with Walton v. City of Red Bluff, 3 Cal. Rptr. 2d 275, 279, 281 (Ct. App. 1991) (concluding that language in a deed, which included the word "revert," evidenced intent to create a possibility of reverter); Oxy USA, Inc. v. Red Wing Oil, LLC, 360 P.3d 457, 462 (Kan. Ct. App. 2015) ("The right of reversion or the possibility of reverter is a vested future interest known as a fee simple determinable."); Ditmore v. Michalik, 625 N.W.2d 462, 468 (Mich. Ct. App. 2001) (noting that "the deed provided for an automatic reversion in the event of a violation, and hence a right of reversion"); Webster's Third New International Dictionary 1943 (unabridged ed. 2002) (defining the term "reverter" as "a possibility of reversion of an estate in land").

In addition, the defendant's quotation of the deed in support of this argument omits crucial language. The deed provides, in relevant part: "If at any time the above requirements . . . are not met for a period of one year, the title to the golf course area . . . shall, at the option of the Grantor or its successors or assigns, revert to Grantor, or its successors or assigns." The

7

phrase "at the option of Grantor or its successors or assigns" negates any conclusion that the deeding parties intended the fee to cease automatically upon the happening of the specified event. See Lyford, 75 N.H. at 225 (noting that an estate in fee subject to a condition subsequent "does not terminate until entry by the person having the right"). To the contrary, the deed's language indicates that the original deeding parties intended that the grantor — CCCI or one of its successors or assigns — would have to take some affirmative action to enforce the golf course restriction before the grantee's estate would terminate.

The Farnum Hill Deed cannot be interpreted as conveying a determinable fee and reserving a possibility of reverter without ignoring the phrase "at the option of Grantor or its successors or assigns." When interpreting a deed, we must give it the construction "as will, if possible, give effect to all its provisions." Id. at 222. Interpreting the deed as conveying a fee simple subject to a condition subsequent gives "full effect . . . to all the language of the deed." Id. at 223.

The defendant nevertheless argues that if the deed's language does not "clearly create[] a transferable 'right of reversion' or possibility of reverter," then "it is ambiguous, and the substantial, compelling extrinsic evidence of the parties' intentions show that the parties intended to create a transferrable reversionary interest." "The language of a contract, including a deed, is ambiguous if the parties to the contract could reasonably disagree as to the meaning of the language." Arell, 173 N.H. at 645. The defendant argues that if the phrase "at the option of the Grantor or its successors and assigns" is construed to indicate a right of reentry, it conflicts with other language in the deed because "the interest in question cannot be both a [right of reentry] and a right of reversion." But the terms "revert" and "reversion" can be read consistently with a right of reentry. We are not persuaded that the deed is ambiguous because it gives the "right of reversion" to "the Grantor and its heirs, successors and assigns." We agree that the plain language of the deed contemplated that the right of reentry reserved in the grantor would be assignable and transferrable. That a transfer or assignment may be ineffective does not create ambiguity. See Anna H. Cardone Revocable Trust v. Cardone, 160 N.H. 521, 531 (2010) (explaining that "confusion, or legal impossibility, [does not] create ambiguity" in the deed).

We reiterate that "ambiguity exists only when the parties could reasonably disagree as to a clause's meaning," id. (quotation and brackets omitted), and the defendant has failed to raise a reasonable disagreement as to the deed's language. Considering the deed as a whole, and giving effect to all of its terms, including the phrase "at the option of the Grantor or its successors or assigns," we conclude that it clearly and unambiguously expresses the intent of the parties to convey a fee simple subject to a condition subsequent, with CCCI retaining a right of reentry. See Arell, 173 N.H. at 645 ("If the

language of the deed is clear and unambiguous, we interpret the intended meaning from the deed itself, considering it as a whole, without resorting to extrinsic evidence."). Even if some language in the deed is imprecise, or even "unfortunate," it neither detracts from that expressed intent nor creates an ambiguity. See Anna H. Cardone Revocable Trust, 160 N.H. at 533 (concluding that, "[w]hile use of the term 'revert' [in a deed clause] was unfortunate, it was by no means a fatal choice of words," nor did it create ambiguity, as the language of the clause could not "be reasonably read to mean anything but that title to the condominium should transfer to" a party other than the grantor if the grantee violates the terms of the deed). Accordingly, we conclude that the trial court did not err by ruling that the interest at issue is a right of reentry.

The defendant next contends that even if the interest retained by CCCI is a right of reentry, or "power of termination," it was nevertheless transferrable. The defendant first argues that the interest was "properly conveyed" by the December deed because "it was conveyed together with a future interest reserved in the grantor, in the form of a restrictive covenant, burdening the property in perpetuity for the express benefit of the grantor." The defendant relies on sections 161 and 154 of the Restatement (First) of Property. Section 161 provides, in relevant part:

> The owner of a power of termination in land has a power, by conveyance inter vivos, to transfer his interest
>
> . . .
>
> (c) when the power of termination supplements a reversionary interest also had in the same land by the owner of such power, and the owner of such reversionary interest and power makes an otherwise effective conveyance of both such interests, or of the corresponding parts of such interests.

Restatement (First) of Property § 161, at 578. Section 154, in turn, defines a "reversionary interest" as "any future interest left in a transferor or his successor in interest." Restatement (First) of Property § 154, at 525 (1936). The defendant asserts that these provisions apply here to validate the transfer of a right of reentry because "[t]he property rights reserved to [CCCI], and transferred to [the defendant], contained a future interest, a perpetual covenant inuring to the benefit of the grantor."

We need not decide whether to adopt the foregoing Restatement provisions as they are inapplicable. Contrary to the defendant's assertion, a restrictive covenant or servitude is a present, not future, interest. See In re County Treasurer, 869 N.E.2d 1065, 1087 (Ill. App. Ct. 2007). Accordingly, the

9

"future interest left in a transferor or his successor in interest" exception in section 161(c) of the Restatement (First) of Property, by its terms, does not apply. Moreover, unlike the Restatement's illustration of this exception, in which the grantor conveyed the property for a term of years and reserved the right to re-enter if the grantee failed to pay the rent due, see Restatement (First) of Property § 161(c) cmt. d at 582, here, CCCI conveyed the entire fee simple estate. See Ashuelot National Bank, 74 N.H. at 151. Therefore, because the exception set forth in section 161(c) does not apply here, the right of reentry that CCCI retained in the property was not transferable to the defendant.

The defendant also contends that "RSA 477:3-b clearly contemplates that a right of re-entry or power of termination is a transferable property interest." We disagree. RSA 477:3-b imposes certain limitations on the creation and retention of possibilities of reverter, rights of reentry, and executory interests. See RSA 477:3-b (2013). It provides, in part, that "[u]nless the original grantor or grantee of the interest was, or the present owner of the interest is, a public or charitable organization, any existing possibility of reverter, right of re-entry, or executory interest in real property shall become void unless renewal declarations are filed in the appropriate registry of deeds as hereinafter provided." RSA 477:3-b, III(a). The defendant argues:

> The plain language of RSA 477:3-b very clearly implies that a right of re-entry may be held by either "the original grantor or grantee of the interest" or by "the present owner of the interest." If [the plaintiff] were correct about the law, then the "present owner" could not own a "right of reentry" and the language of this statute to that effect would be superfluous.

(Citation omitted.) Because RSA 477:3-b, III(a) applies to other interests in addition to rights of reentry, including possibilities of reverter, which we assume, for purposes of this opinion, to be transferrable inter vivos, reference to "the present owner of the interest" is not superfluous as the defendant suggests.

The defendant also argues that the trial court erred by ruling that the 1991 order and subsequent docket markings in the previous quiet title proceeding "had the retroactive effect of quieting title to the 'right of reversion' in [the plaintiff] following the trial court's 2020 Decree." It contends that these orders do not have preclusive effect because CCCI's shareholders did not have "a full and fair opportunity to litigate" the matter in the prior quiet title action because, at that time, "all the parties and the court [viewed the so-called 'right of reversion'] to have vested with" the defendant.

Nonetheless, as the plaintiff observes, RSA 477:3-b, II-III would have invalidated any interest remaining in the shareholders of CCCI as of December

31, 2008.  See RSA 477:3-b, II-III.  CCCI was a private corporation, not a charitable organization.  See RSA 477:3-b, II(a).  There is no evidence that CCCI or its shareholders filed renewal declarations for any such interest they retained in the property.  See RSA 477:3-b, III.  Therefore, we need not decide whether the 1991 order and docket markings conclusively determined the shareholders' interests because any such interests would be invalid.  See RSA 477:3-b, II-III.  Accordingly, we conclude that the trial court properly ruled that the plaintiff holds title to the property in fee simple absolute.

The defendant next challenges the denial of its motion to amend its counterclaim to add a claim for declaratory relief.  In support of its motion to amend, the defendant argued that, regardless of the nature of the future interest retained by CCCI, the Farnum Hill deed created an independently enforceable restrictive covenant that required maintenance and operation of a golf course on the property.  Accordingly, the defendant's proposed amendment restated the factual allegations set forth in its counterclaim, but requested the trial court to declare that: (1) the defendant is the beneficiary of the golf-course restriction; (2) the plaintiff remains bound by the restriction; and (3) the defendant has standing to enforce the restriction as a covenant.  The plaintiff did not file an objection to the amendment, noting that it was "within the court's discretion to allow it."  The plaintiff argued, however, that the amendment was "futile" because CCCI's shareholders never authorized the transfer of CCCI's right to enforce the golf-course restriction as a covenant.  The trial court denied the defendant's motion, reasoning that "[t]he defendant's proposed amendment appears to be premised on the validity of the December deed."  Thus, it concluded that because "the December deed is void, the defendant's proposed amendment fails to state a claim upon which relief may be granted."

A trial court may permit a substantive amendment to pleadings "in any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice."  RSA 514:9 (2007).  Accordingly, liberal amendment of pleadings is permitted unless the amendment would surprise the opposing party, introduce an entirely new cause of action, or call for substantially different evidence.  Sanguedolce v. Wolfe, 164 N.H. 644, 647-48 (2013).  Whether to allow an amendment rests in the sound discretion of the trial court, and we will not disturb the trial court's decision absent an unsustainable exercise of discretion.  Id. at 648.

On appeal, the defendant argues that the trial court erred by concluding that "its decision concerning the non-transferability of" CCCI's future interest "disposed of all the issues."  In so arguing, the defendant renews its argument that the Farnum Hill deed created an independently enforceable restrictive covenant, separate and apart from the future interest retained by CCCI.  Thus, the defendant maintains that, even if CCCI's future interest was not freely

11

transferable to the defendant, CCCI validly conveyed its right to enforce the restrictive covenant to the defendant via the December deed. According to the defendant, the trial court "mistakenly assumed" that because the Farnum Hill deed created an inalienable right of reentry that was retained by CCCI, the December deed was void in its entirety, meaning that CCCI could not have validly transferred its right to enforce the restrictive covenant to the defendant.

We agree with the defendant that the original parties to the Farnum Hill deed intended to create an independently enforceable restrictive covenant, separate and apart from the future interest the original deeding parties intended to convey to CCCI. The Farnum Hill deed states that the golf-course restriction "shall inure to the benefit of, Grantor and Grantee and their respective . . . successors and assigns as a covenant that shall run with the land, in perpetuity." "A covenant, as used in the context regarding the use of property, is an agreement by one person, the covenantor, to do or refrain from doing something enforceable by another person, the covenantee." Lynch v. Town of Pelham, 167 N.H. 14, 20-21 (2014) (quotation omitted)). One method of enforcing a restrictive covenant is to create a future interest in the grantor. See id. at 18 (noting that the deed at issue "did not specify a means of enforcing the restrictive covenants, such as a right of re-entry or reverter"). However, covenants are also enforceable "by any appropriate remedy or combination of remedies, which may include declaratory judgment, compensatory damages, punitive damages, nominal damages, injunctions, restitution, and imposition of liens." Restatement (Third) of Property: Servitudes § 8.3, at 492 (2000).

Although the parties dispute whether the deed created a right of reentry or a possibility of reverter, there is no dispute that the deeding parties intended to enforce the golf-course restriction by leaving reserved rights to CCCI. However, there is no suggestion in the Farnum Hill deed that the parties intended to make the enforceability of the golf-course restriction contingent upon the validity of those reserved rights. To the contrary, the phrase "in perpetuity," which appears twice in the golf-course restriction set forth in the Farnum Hill deed, suggests that the parties intended the golf-course restriction to remain enforceable irrespective of whether CCCI or its successors or assigns continued to hold a right of reentry or possibility of reverter in the property. The Farnum Hill deed also makes clear that the parties intended the covenant to "inure to the benefit of" CCCI's "successors and assigns," which, by virtue of the December deed, includes the defendant. Although the deed does not expressly identify any enforcement mechanisms, other than the right of reentry that we have determined was retained by CCCI, it does not, by its terms, preclude CCCI's successors or assigns from seeking other appropriate remedies in the event of a breach. We therefore conclude that, notwithstanding that CCCI had an inalienable right of reentry, the defendant may have the right to enforce the golf-course restriction as a restrictive covenant.

The plaintiff argues that, even if the Farnum Hill deed created an independently enforceable restrictive covenant, CCCI failed to convey its right to enforce the covenant to the defendant. To support this argument, the plaintiff relies, in part, upon the language of a corporate resolution authorizing CCCI to convey its future interest to the defendant. That resolution, the plaintiff asserts, referenced only the "right of reversion" and "said reversionary interest" and made no mention of a covenant.

We are not persuaded by the plaintiff's argument. Notwithstanding the limited language of the corporate resolution, the December deed describes CCCI's conveyance to the defendant as including "[a]ll and the same right, interest and title, in and to the reversionary interest retained by the Grantor in the [July] deed." Thus, the December deed makes clear that CCCI intended to convey its entire interest in the property to the defendant, including its right to enforce the golf-course restriction as a restrictive covenant. Although, as the plaintiff also points out, the December deed does not expressly reference a restrictive covenant, it does incorporate the entirety of the golf-course restriction as set forth in the Farnum Hill deed, including the statement "RESERVATION, CONDITIONS, and RESTRICTION" and the language expressly stating the parties' intent to create "a covenant that shall run with the land, in perpetuity." Accordingly, because the December deed is clear and unambiguous, we need not consider the language of the corporate resolution to discern the parties' intent at the time of the conveyance. See White, 171 N.H. at 663-64 ("If the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence." (quotation omitted)).

In light of our construction of the language of the Farnum Hill and December deeds, we conclude that the trial court based its denial of the defendant's motion to amend upon a faulty legal premise: that the defendant's ability to enforce the golf-course restriction is wholly contingent upon whether CCCI's right of reentry was transferable. As explained above, the language of the Farnum Hill deed indicates that the original parties intended the golf-course restriction to be enforceable as a restrictive covenant regardless of whether CCCI or its successors or assigns retained a right of reentry or possibility of reverter in the property. Thus, the issue of whether CCCI validly conveyed its right of reentry to the defendant via the December deed has no bearing on the defendant's right to enforce the golf-course restriction as a restrictive covenant. See Early v. Mimedx Group, Inc., 768 S.E.2d 823, 827 (Ga. Ct. App. 2015) ("It is well settled that the intent of the parties determines whether a contract is severable such that the remaining contract provisions will survive even if one or more provisions of the contract are void."); see also Technical Aid Corp. v. Allen, 134 N.H. 1, 17-19 (1991) (concluding that unenforceable provisions in an employment contract were severable from the remainder of the contract "[d]espite the lack of an explicit severability provision"). We therefore conclude that the trial court erred by premising its

13

conclusion that the December deed was void upon its finding that CCCI's interest was an inalienable right of reentry and by denying the defendant's motion to amend on that basis.

Although we disagree with the trial court's rationale for denying the defendant's proposed amendment, we express no opinion as to whether the defendant has a legitimate interest in enforcing the golf-course restriction, and, thus, standing to bring an enforcement action against the plaintiff. See Lynch, 167 N.H. at 25 (concluding that "an entity that holds the benefit of a covenant in gross can enforce it if it can establish a legitimate interest in enforcement"). The parties' arguments with respect to that issue are better suited for resolution in the trial court, and because the trial court did not have occasion to consider those arguments in the first instance, we decline to do so. Nor do we express any opinion as to whether the defendant's proposed amendment was "necessary for the prevention of injustice," RSA 514:9 — a matter best left to the sound discretion of the trial court. See Sanguedolce, 164 N.H. at 648. Accordingly, we vacate the denial of the defendant's motion to amend and remand to the trial court for additional proceedings.

Any issues that the defendant raised in its notice of appeal, but did not brief, are deemed waived. See Town of Londonderry, 168 N.H. at 379.

Affirmed in part; vacated in part; and remanded.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred; BROWN, J., retired superior court justice, specially assigned under RSA 490:3, concurred.